140 N.J. Super. 582 (1976)
357 A.2d 45
STATE OF NEW JERSEY, PLAINTIFF,
v.
THOMAS ROMA, DEFENDANT.
Superior Court of New Jersey, Law Division (Criminal).
Decided March 17, 1976.
*584 Messrs. Shanley & Fisher, attorneys for Roland Reed, Ph.D. (Mr. Patrick Silva, appearing).
Messrs. Farber, Hughes & Krause, attorneys for defendant (Mr. John J. Hughes, appearing).
Mr. James T. O'Halloran, Hudson County Prosecutor, for the State. (Mr. William T. Petrina, Assistant Prosecutor, appearing).
YOUNG, J.C.C. Temporarily Assigned.
Should the statutory privilege granted marriage counselors be recognized when interposed in response to process served by both the prosecutor and defense counsel to compel the testimony and records of a counselor for use at a hearing on defendant's competency to stand trial on a charge of murder? N.J.S.A. 45:8B-29. This is the issue presented on the application of Roland Reed, Ph.D., a licensed marriage counselor, to quash a subpoena duces tecum served upon him by counsel for defendant and a subpoena ad testificandum served by the Prosecutor of Hudson County in this pending criminal action. Both the prosecutor as well as defense counsel argue that the marriage counselor may not invoke the privilege in the circumstances presented in this case. Defense counsel asserts that the records and the testimony are essential to a determination of the issues of competency as well as guilt.
Defendant Thomas Roma is charged in a four-count indictment with the premeditated slaying of his infant son John with a knife on or about August 16, 1975 in the City of Bayonne, and with the premeditated slaying of his wife Jean with an axe at the same time and place aforementioned. At a pretrial conference the court was advised that a major issue at the trial will be defendant's sanity at the time the acts alleged were committed. Preliminarily, the question of *585 the competency of defendant, now in Trenton Psychiatric Hospital, to stand trial will have to be determined. In preparation for the scheduled hearing into the issues here noted, Roland Reed, Ph.D., a licensed marriage counselor of the State of New Jersey and a Presbyterian minister, was served with subpoenas, as previously mentioned.
In his affidavit in support of the application to quash, Dr. Reed states that during the months of March through August 1975 he rendered marriage counseling to Thomas Roma and to his wife Jean, now deceased. Those conferences, Dr. Reed continues, were pursuant to his duties as a marriage counselor. To protect the communications of that relationship, Dr. Reed invokes the provisions of the Practicing Marriage Counseling Act, N.J.S.A. 45:8B-1 et seq., more particularly § 29 thereof which reads as follows:
Any communication between a marriage counselor and the person or persons counseled shall be confidential and its secrecy preserved. This privilege shall not be subject to waiver, except where the marriage counselor is a party defendant to a civil, criminal or disciplinary action arising from such counseling, in which case, the waiver shall be limited to that action.
This statute is also reported as Evid. R. 28A-1.
Counsel for the State argues that the privilege does not inure to the benefit of the marriage counselor, but only to the spouses, reasoning that it is only a husband or a wife who would be embarrassed by the unauthorized disclosure of the information imparted in confidence to the counselor. In the pending criminal action the wife is dead and the surviving husband, through his assigned counsel, pleads with the court to compel disclosure in support of his defense of insanity. Thus, he continues, there is no public policy to be served by enforcing the privilege in the circumstances. Moreover counsel for the State points to the provisions of N.J.S.A. 2A:84A for the principle that there is no interspousal privilege to the compulsion of testimony when a spouse or child of a spouse are the victims of a crime. Lastly, counsel argues *586 that the privilege should be restricted to situations in which there is no mutual consent by the spouses or by a surviving spouse.
Counsel for defendant not only adopts the reasoning of the State here summarized, but also contends that the privilege under review is a "hearsay type" of privilege confined to oral communications, whereas counsel intends to consult with Dr. Reed about his observations of the demeanor and appearance of defendant during the counseling sessions.
In response, counsel for Dr. Reed points to the plenary scope of the statutory language against waivability and argues that the very fact that the Legislature chose to insert an exception when the counselor is a party defendant indicates that the statute will admit none other.
The problem presented is a novel one in New Jersey and, as research indicates, in every other jurisdiction. The statute under review was the subject of comment in two reported cases. In Wichansky v. Wichansky, 126 N.J. Super. 156, 160 (Ch. Div. 1973), a matrimonial action, the court ruled that the Legislature intended to afford the privilege to all marriage counselors, whether they were licensed under the act or engaged in marriage counseling as part of their practice in another profession. In that action a subpoena directed to a psychologist who had done marriage counseling was quashed. More recently, the Appellate Division, in the course of phrasing appellant's argument, indicated in dictum that the statutory privilege of marriage counselors was not subject to compelled disclosure in a waiver situation. Kerr v. Kerr, 129 N.J. Super. 291, 294 (1974). That decision was also rendered in matrimonial litigation.
The rationale of the privilege to marriage counselors is that parties to troubled marriages should be encouraged to resort to counseling free of any inhibitions which might result from apprehension of disclosure. Wichansky v. Wichansky, supra 126 N.J. Super. at 160. Such apprehension is most likely to arise in the context of anticipated or pending matrimonial litigation, as the cases here cited confirm.
*587 There is no legislative history to assist the court; no legislative hearings were held nor was a statement of purpose appended to the bill. Apart from its circumstantial context, the language of N.J.S.A. 45:8B-29 reveals no underlying purpose that is readily applicable to the problems before the court.
This court concludes, contrary to the arguments of prosecutor and defense counsel, that the nonwaivability of the marriage counselor's privilege is not contingent upon the mutual waiver by both spouses or upon the waiver of a surviving spouse. However, this interpretation of the statute is not dispositive of the problem in the factual context of the pending case. In addition to the arguments raised by the parties, the court is on its own motion constrained to interpose an aspect of constitutional dimensions, namely, the Sixth Amendment right of defendant to have compulsory process to obtain witnesses in his favor, as well as his right under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to have the opportunity to present an adequate defense. The impact of the application of the marriage counselor's privilege on the exercise of these rights will be discussed.
Due process of law requires that an accused be accorded the right to a fair opportunity to defend against the State's charges. To secure that privilege the United States Supreme Court has over the years declared certain rights to be fundamental to the administration of criminal justice. "Few rights are more fundamental than that of an accused to present witnesses in his own defense." Chambers v. Mississippi, 410 U.S. 284, 302, 93 S.Ct. 1038, 1049, 35 L.Ed.2d 297 (1973). Mr. Justice Black, writing in In re Oliver, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948) declared for the Court:
A person's right to reasonable notice of a charge against him and an opportunity to be heard in his defense  a right to his day in court  are basic in our system of jurisprudence; and these rights include, as a minimum, a right to examine the witnesses *588 against him, to offer testimony, and to be represented by counsel. [at 273, 68 S.Ct. at 507]
The right to offer testimony would be meaningless without access to compulsory process, and that process encompasses more than the compelling of the physical presence of a witness in the courtroom. Washington v. Texas, 388 U.S. 14, 19, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967). It includes recourse to the contempt power of the court to compel a witness to testify. The compulsory production of evidence upon the petition of a defendant is basic to the adversary system of criminal justice and is an integral part of the due process of law guaranteed by the Fourteenth Amendment. Writing of the Sixth Amendment, the Supreme Court has stated that, "In short, the Amendment constitutionalizes the right in an adversary criminal trial to make a defense as we know it." Faretta v. California, 422 U.S. 806, 818, 95 S.Ct. 2525, 2533, 45 L.Ed.2d 562 (1975).
These rights were succinctly summarized in the passage which follows, drawn from Washington v. Texas, supra:
The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so that it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law. [388 U.S. at 19, 87 S.Ct. at 1923]
For a more recent reiteration of the right of a defendant in a criminal proceeding, see also, Webb v. Texas, 409 U.S. 95, 93 S.Ct. 351, 34 L.Ed.2d 330 (1972). That the rights under review are applicable in a criminal proceeding brought by a state is not open to question. See Washington v. Texas, supra, 388 U.S. at 19, 87 S.Ct. 1920.
The motion to quash before this court sets the right to compulsory process secured by the Sixth Amendment and the *589 guarantees of due process against a statutory privilege accorded marriage counselors. The function of privileges in our jurisprudence was described by Justice Francis in State v. Briley, 53 N.J. 498 (1969), in which competency was in issue:
Privileges which enable a person to prevent another from testifying against him or which permit him to decline to testify himself, whether they arise from the marital status, or physician and patient relationship, or relate to self-incrimination or otherwise, are obstacles in the path of the normal trial objective of a search for ultimate truth. They are accepted only because in the particular area concerned, they are regarded as serving a more important public interest than the need for full disclosure.
It is the basic policy of our law that every person is qualified and compellable to be a witness and to give relevant and competent evidence at a trial. Rule 7 of the New Jersey Rules of Evidence; N.J.S. 2A:84A-16. Privileges expressly granted to persons to refuse to testify or to prevent another from testifying are exceptions to that policy. See Rules 23-32, 34, 36-40; N.J.S. 2A:84A-17 to 32. Since rigid adherence to the letter of the privileges promotes the suppression of truth, they should be construed and applied in sensible accommodation to the aim of a just result. In view of the obvious policy of the law to enlarge the domain of competency of witnesses and to adapt rules of evidence to the successful development of the truth, competency should be regarded as the rule and incompetency as the exception. This approach is plainly applicable to the so-called marital privilege. See Funk v. United States, 290 U.S. 371, 379-382, 54 S.Ct. 212, 78 L.Ed. 369 (1933); Shores v. United States, 174 F.2d 838, 11 A.L.R. 2d 635 (8th Cir.1949); Wyatt v. United States, supra; Note, 38 V.L. Rev. 359 (1952). It follows therefore that when a greater public interest is served by recognizing the competency of one spouse to testify against the other and no violence is done to the privilege as expressed in a statutory or judicial rule of evidence, the testimony should be received. [at 505-506]
In the cited case our Supreme Court rejected defendant's contention that his wife should not have been allowed to testify against him when he withheld his consent on an indictment charging murder.
Justice Francis noted that the Supreme Court of Missouri refused to apply a statute which barred the testimony of a wife in a prosecution of her husband for assault upon their *590 child. "It is, in our opinion, contrary to all principles of morality and justice to close the mouth of the only witness in such a case as the present. What is not good sense should not be the law." State v. Kollenborn, 304 S.W.2d 855, 864 (1957), quoted approvingly in State v. Briley, supra at 508.
Other cases may be cited in which full disclosure was held to serve a more important public interest than the enforcement of a privilege. A recent decision of the Supreme Court, Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), presented the competing considerations of keeping the record of juvenile convictions confidential and the right to impeach a witness on cross-examination. The decision is stated in the words of Chief Justice Burger (at 320, 94 S.Ct. at 1112): "The State's policy interest in protecting the confidentiality of a juvenile offender's record cannot require yielding of so vital a constitutional right as the effective cross-examination for bias of an adverse witness."
A challenge to the Government's privilege to withhold the identity of informers required a balancing process among competing considerations. Several of the considerations were identified by the Supreme Court in the following passage drawn from Roviaro v. United States, 353 U.S. 53, 62, 77 S.Ct. 623, 629, 1 L.Ed.2d 639 (1957): "Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." The court in that case concluded (at 60-61, 77 S.Ct. 623) that a privilege of nondisclosure must yield when the evidence sought is relevant to the defense of an accused or is essential to a fair determination of a cause.
In another recent opinion the exclusion of evidence grounded in the hearsay rule was not enforced in a homicide prosecution. The Supreme Court declared that "In *591 these circumstances, where constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice." Chambers v. Mississippi, supra, 410 U.S. at 302, 93 S.Ct. at 1049.
Perhaps the most compelling case in which the Supreme Court had occasion to weigh the competing interests of enforcing a privilege as against the requirements of the fair administration of criminal justice was that of United States v. Nixon, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974). In that celebrated case the Government, through the agency of a special prosecutor, sought to compel the production of documents said to be relevant to the criminal prosecution of seven named coconspirators in what has come to be known as the "Watergate Affair." The President interposed the claim of privilege founded upon the sanctity of executive communications. In declining to recognize the claim of privilege, the Supreme Court discussed the interrelation of such claims with the mandate of the Sixth Amendment. The language of the Chief Justice is here quoted at length:
The right to the production of all evidence at a criminal trial similarly has constitutional dimensions. The Sixth Amendment explicitly confers upon every defendant in a criminal trial the right "to be confronted with the witnesses against him" and "to have compulsory process for obtaining witnesses in his favor." Moreover, the Fifth Amendment also guarantees that no person shall be deprived of liberty without due process of law. It is the manifest duty of the courts to vindicate those guarantees, and to accomplish that it is essential that all relevant and admissible evidence be produced.
In this case we must weigh the importance of the general privilege of confidentiality of Presidential communications in performance of his responsibilities against the inroads of such a privilege on the fair administration of criminal justice. The interest in preserving confidentiality is weighty indeed and entitled to great respect. However, we cannot conclude that advisers will be moved to temper the candor of their remarks by the infrequent occasions of disclosure because of the possibility that such conversations will be called for in the context of a criminal prosecution.
*592 On the other hand, the allowance of the privilege to withhold evidence that is demonstrably relevant in a criminal trial would cut deeply into the guarantee of due process of law and gravely impair the basic function of the courts. A President's acknowledged need for confidentiality in the communications of his office is general in nature, whereas the constitutional need for production of relevant evidence in a criminal proceeding is specific and central to the fair adjudication of a particular criminal case in the administration of justice. Without access to specific facts a criminal prosecution may be totally frustrated. The President's broad interest in confidentiality of communications will not be vitiated by disclosure of a limited number of conversations preliminarily shown to have some bearing on the pending criminal cases. [at 711-712, 94 S.Ct. at 3109]
Do the policy considerations which support the statutory privilege accorded marriage counselors transcend the constitutional guarantees of the Sixth and the Fourteenth Amendments afforded to a defendant in a criminal action? This court thinks not. Evidential limitations may be adopted by a state, but such limitations must not be arbitrary and they must not impinge upon the provisions of the Constitution pertaining to due process. See Wisconsin v. Gagnon, 497 F.2d 1126, 1129 (7 Cir.1974); Myers v. Frye, 401 F.2d 18, 21 (7 Cir.1968). When to sustain the exercise of a privilege, such as that here in issue, would compromise fundamental constitutional rights, judicial recognition of that privilege must be withheld. The considerations which support the marriage counselor's privilege to withhold relevant communications must yield to the constitutional rights of a defendant to present an adequate defense when charged with murder and exposed to a judgment of conviction and a sentence of life imprisonment.
Concededly, a showing of materiality of the evidence sought must first be made. In the present case, the undisputed fact that Dr. Reed counseled with defendant and his wife within days of the commission of the crimes charged renders the marriage counselor's evidence patently relevant and material to the defense of insanity pleaded by defendant.
*593 The unqualified language of the statute, N.J.S.A. 45: 8B-29 forecloses any alternative other than a declaration of unconstitutionality in the present circumstances. The application to quash on behalf of Dr. Reed is denied.