STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. ISAAC ALLEN AND CLYDE COFIELD, DEFENDANTS, AND ANTHONY BRADSHAW, DEFENDANT-APPELLANT.

Argued January 13, 1976—Decided June 24, 1976.

476

*Mr. John J. Trombadore,* Assistant Deputy Public Defender, argued the cause for appellant (*Mr. Stanley C. Van Ness,* Public Defender, attorney; *Mr. Trombadore* and *Mr. Steven Zamrin,* Assistant Public Defender, of counsel; *Mr. Zamrin,* on the brief).

*Mr. Nathan Rosenhouse* argued the cause for respondent juvenile G. L.

*Mr. Nicholas L. Bissell, Jr.,* Assistant Prosecutor, argued the cause for respondent State of New Jersey (*Mr. Stephen R. Champi,* Somerset County Prosecutor, attorney).

The opinion of the Court was delivered by

SCHREIBER, J. At issue in this case is the propriety of an order permitting the County Prosecutor to examine a juvenile's medical reports, which are part of the records resulting from a juvenile proceeding. The purpose for the Prosecutor's request is to determine whether to move for leave to obtain a psychiatric examination of the juvenile, who is a proposed defense witness in a criminal action. We find that the order was properly granted.

Anthony Bradshaw was indicted by the Somerset County Grand Jury for murder and armed robbery. He filed a notice of alibi and listed a juvenile, G. L., as an alibi witness. *R.* 3:11–1. The State's investigation disclosed that G. L. had been incarcerated in the New Jersey State Home for Girls and that she was currently on parole; that while

at the Home she had undergone psychological and psychiatric examinations, the records being in the custody of the Home and in the County Probation and Parole Departments; and that confidential sources had disclosed that on occasion she suffers from psychological delusions.

The State moved before the Superior Court for orders to review the medical and psychiatric records and to require G. L. to submit to a psychiatric examination. After oral argument, the Court reserved decision until it had examined the records *in camera* to determine whether there was any basis for the State's application to compel G. L. to submit to a medical examination. The Court, after examining material and finding that it was relevant and hearing further oral arguments, held that the Prosecutor was entitled to review the records pursuant to *N. J. S. A.* 2A:4–65 "for the sole purpose of determining — the Prosecutor determining whether he wants to move to have a psychiatric examination. . . ."

G. L.'s motion for a stay of the order and leave to appeal, denied by the Appellate Division, was granted by this Court. 68 *N. J.* 285 (1975).

The general policy of confidentiality and limited disclosure of a juvenile's records was initially expressed in the Juvenile and Domestic Relations Court Law adopted in 1929. *L.* 1929, *c.* 157. Section 16 of that Act stated in part:

\* \* \* The disposition of a child or any evidence given in the court shall not be admissible as evidence against the child in any case or proceeding in any other court, nor shall such disposition or evidence be held against the child's record in any future civil service examination, appointment or application.

Section 27 provided in part:

The court shall maintain complete records of all petitions and hearings in cases brought before it. Such records shall be withheld from indiscriminate public inspection but shall be open to inspection by the parent or other authorized representative of the person concerned and, in the discretion of the court, by other persons having a legitimate interest.

In the Statutory Revision of 1951 the substance of section 16 was retained but that of section 27 deleted. In 1973 as part of the revision of the juvenile law, *N. J. S. A.* 2A:4–42 *et seq.,* confidentiality provisions, *N. J. S. A.* 2A:4–64 and 65, were enacted. *N. J. S. A.* 2A:4–64 provides:

*Effect of Disposition.*

No disposition under this act shall operate to impose any of the civil disabilities ordinarily imposed by virtue of a criminal conviction, nor shall a juvenile be deemed a criminal by reason of such disposition.

The disposition of a case under this act shall not be admissible against the juvenile in any criminal or penal case or proceeding in any other court except for consideration in sentencing.

*N. J. S. A.* 2A:4–65 reads:

*Disclosure of juvenile records; penalties for disclosure.*

a. Social, medical, psychological, legal and other records of the court and probation department, and records of law enforcement agencies, pertaining to juveniles charged under this act, shall be strictly safeguarded from public inspection. Such records shall be made available only to:

(1) Any court or probation department;

(2) The Attorney General or county prosecutor;

(3) The parents or guardian and to the attorney of the juvenile;

(4) The Division of Youth and Family Services, if providing care or custody of the juvenile;

(5) Any institution to which the juvenile is currently committed; and

(6) Any person or agency interested in a case or in the work of the agency keeping the records, by order of the court for good cause shown.

b. Whoever, except as provided by law, knowingly discloses, publishes, receives, or makes use of or knowingly permits the unauthorized use of information concerning a particular juvenile derived from records listed in subsection a. or acquired in the course of court proceedings, probation, or police duties, shall, upon conviction thereof, be guilty of a disorderly person's offense. [*N. J. S. A.* 2A:4:65].

The deletion of section 27 in 1951 was undoubtedly due to the Rule promulgated in 1948 by the Supreme Court relat-

ing to the Juvenile and Domestic Relations Courts. That Rule, 6:2–7(b), read in part:

(b) Social records shall consist of reports of social investigations, probation treatment or supervision, psychological or psychiatric examinations, and other reports concerning family life or compositions, school or occupational history, physical condition, foster home placement, and delinquent behavior of children. Such records shall be strictly safeguarded from indiscriminate public inspection.

Social records shall be available to the chief probation officer and his assistants, state and county correctional training schools and institutions; State Board of Child Welfare for investigational, treatment or foster home placement purposes; to judges of county, Superior and Supreme Courts, whenever a proper administration of justice requires or the interest or welfare of a child may be protected or conserved; and to the Governor of the State. Such records shall not be used as evidence during the trial or hearing of any person.

This Rule has been modified from time to time and as *R.* 5:10–7, now provides:

*Classification and Availability of Court Records.*
(a) *Procedural Records.* Procedural records include the docket, petitions, complaints, citations, summonses, orders, calendars, index cards, minutes, intake and referral forms, and transcripts of the verbatim record of any proceeding in the court.

(b) *Social Records.* Social records include all reports and correspondence pertaining to a person's social, familial, environmental, psychological, psychiatric, medical, educational, vocational, institutional, probation or parole history, background, examination, diagnosis, treatment or adjustment.

(c) *Availability.* All procedural and social records in juvenile matters and all social records in adult matters shall be strictly safeguarded from indiscriminate public inspection. The court may, in its discretion, in the best interest of a juvenile or adult or for other good cause, permit inspection of any procedural or social record, except that procedural and social records shall be available on a confidential basis, without court order, to attorneys for the parties and in juvenile matters also to his parents, guardian or custodian, to the chief probation officer and his assistants; to state and county correctional training schools and institutions, to the State Bureau of Children's Services for investigational, treatment or placement purposes; to justices and judges of the Supreme and Superior Court and the county and juvenile and domestic relations courts; and to the Governor of the State. *Social records shall not*

*be used as evidence during the trial or hearing of any person, except as otherwise permitted by these rules or the rules of evidence.* [Emphasis added].

Under the existing rule, *R.* 5:10–7(c), the attorneys for the juvenile, his or her parents, guardian or custodian, chief probation officer and assistants, judges of the Superior Courts and other specified persons may inspect those records on a confidential basis without a court order. The county prosecutor is not one of the enumerated individuals. However, the court upon a showing of good cause may permit other persons including the county prosecutor to examine the records. The county prosecutor is not excluded therefrom.

■ In contradistinction to this rule, the statute *N. J. S. A.* 2A:4–65 provides that the juvenile's records shall be made available upon request to six classes of people including the county prosecutor. The Prosecutor contends that by virtue of the act he has an absolute right to inspection irrespective of his purpose. The statute should not be read that broadly. Its intent and tenor when read as a whole are to make the juvenile's records available to the designated persons without court order for use in conjunction with the treatment, care or other matter concerning the juvenile's welfare. As with the rule, the statute also provides that the records may be made available to any person "by order of the court for good cause shown."

■ Both the Legislature and the Supreme Court have through the years evinced in their respective statutes and rules a policy of preventing the use of evidence adduced in a juvenile's proceeding in any other court and of limiting the availability to others of a juvenile's records, including psychological or psychiatric examinations.[1] However, the statutes

---

[1] In addition to *R.* 5:10–7 reference is made to *R.* 5:9–1(a) which provides for the confidentiality of juvenile hearings and *R.* 5:10–6(b) which limits the use of trial transcripts.

The New Jersey State Bar Association's Juvenile Delinquency Committee analyzed Senate Bill 2141 (1973) which upon enactment

and rules have always recognized that the juvenile's records should be available to third persons with a sufficient legitimate interest or whenever proper administration of justice so required. These competing policies must be weighed in the light of all the pertinent circumstances and, if possible, balanced to safeguard the purposes of both.

At one end of this balancing methodology is the constitutional right of a defendant accused of a crime to confront the juvenile who is to testify against him with the juvenile record and his testimony in the juvenile hearing. In *Davis v. Alaska*, 415 *U. S.* 308, 94 *S. Ct.* 1105, 39 *L. Ed.* 2d 347 (1974), the Supreme Court held that a defendant's Sixth Amendment right "to be confronted with the witnesses against him" superseded Alaska's policy to preserve the secrecy of a juvenile's testimony and disposition. [2] There the juvenile was a crucial prosecution witness and both his status (he was on probation) and prior testimony would have been relevant for the jury to consider in evaluating the juvenile's bias, prejudice, and credibility.

In addition to the defendant's constitutional right is the search for the truth which underlies every criminal trial.

became the 1973 revision of the juvenile law. In its report, dated January 7, 1972, the Committee in commenting on 2A:4–65 wrote:

The assurance of confidentiality of official records involving children is consistent with the non-criminal character of the proceedings and is an important part of the juvenile law.

Theoretically the Court takes the first and most important step torward rehabilitation of the youthful offender in its disposition of the case. The Court then yields to the authority of others to provide the bulk of the rehabilitative process, but the Court does retain a degree of control over this process in regard to the records of the proceedings. The public disclosure of such material has the potential of destroying a child's life through influencing the thinking and behavior of the child as well as those who come into contact with him.

[2] To the same effect: *State v. Hare*, 139 *N. J. Super.* 150 (App. Div. 1976); *State v. Parnes*, 134 *N. J. Super.* 61 (App. Div. 1975); *State v. Brown*, 132 *N. J. Super.* 584 (Law Div. 1975); *State in Interest of A. S.*, 130 *N. J. Super.* 388 (J. & D. R. Ct. 1974).

*State v. McKnight,* 52 *N. J.* 35, 50 (1968). Our rules and statute, although generally placing the cloak of secrecy on juvenile records, recognize that it is fitting and proper that the fact finder be furnished with relevant and material evidence in that quest even in the absence of a constitutional mandate. The extent to which disclosure should be made when balanced against the interest of confidentiality of the juvenile's records is not readily answerable. It is this delicate task to which the courts must address themselves. For example, in *People v. Holsey,* 30 *Ill. App.* 3d 716, 332 *N. E.* 2d 699 (Ct. App. 1975), a defendant charged with child molestation was not permitted to reveal upon cross-examination that the complaining witness had been sent to a boy's training school as a result of a delinquency adjudication for robbery. The court arrived at its conclusion after balancing the importance of the witness' testimony against the policy of confidentiality. *Id.* at 703. *See also, Banas v. State,* 34 *Wis.* 2d 468, 149 *N. W.* 2d 571, 575, *cert.* den. 389 *U. S.* 962, 88 *S. Ct.* 346, 19 *L. Ed.* 2d 373 (1967); *People v. Hawkins,* 58 *Mich. App.* 69, 226 *N. W.* 2d 851, 854 (Ct. App. 1975); Rappeport, "Some Legal Aspects of Juvenile Court Proceedings," 46 *Va. L. Rev.* 908, 923 (1960).

Precisely where the line should be drawn depends on the circumstances. How vital is the testimony? What is the nature of the information sought? What use is to be made of the juvenile's testimony, records, or status? May the information be disclosed on a confidential basis to a limited number of persons? What impact would disclosure have upon the juvenile? Would perusal by the court in the first instance constitute a sufficient safeguard? In weighing the showing of good cause by the movant, the extent of the disclosure must be considered. Where a legitimate interest exists, preliminary and confidential examination by the court (permitted by the statute and the rules) may be warranted, even though the same interest might not justify public disclosure. In-

herent in this process is the trial court's exercise of sound judgment and discretion.

■ In applying these principles we note at the outset that the Prosecutor's ultimate purpose is to resolve the issue of a juvenile's competency as a key alibi witness. Its importance is self-evident. One legal scholar has commented:

> The psychologically abnormal witness can present a serious obstacle to fact finding in the judicial process. Almost any emotional or mental defect may materially affect the accuracy of testimony; a conservative list of such defects would have to include the psychoses, most or all of the neuroses, defects in the structure of the nervous system, mental deficiency, alcoholism, drug addiction and psychopathic personality. [Juviler, "Psychiatric Opinions as to Credibility of Witnesses: A Suggested Approach," 48 *Cal. L. Rev.* 648 (1960)].

Preliminarily the Prosecutor seeks to ascertain whether some of G.L.'s medical records support a finding that she should undergo a psychiatric examination. Whether the Prosecutor should seek to have the witness subjected to an examination, and, if so, whether the court should enter an order to that effect may depend substantially on the juvenile's medical reports. The trial court has already ascertained that the records contain some pertinent information supportive of that position. Counterbalanced is the policy to keep such a record confidential to avoid disclosure of G.L.'s delinquency adjudication. We agree with the trial court that sufficient grounds exist to permit the Prosecutor to examine the records and utlize them, if warranted, to apply for a court ordered examination. However the records should be kept confidential and any references to the juvenile's delinquency, if not pertinent, may be blocked out by the trial court. Those records may also be disclosed on a confidential basis to the attorneys for the defendant Bradshaw and G.L. and to the expert medical witnesses, if any, in the event the Prosecutor moves for a medical examination.

■ But the problems projected by this appeal may not end there. If the psychiatric examination is made and the

issue of competency to testify arises during trial, may the records be utilized directly or indirectly on that issue? In all probability the background information, including the results and findings of the psychiatric and psychological examinations conducted while the juvenile was in custody, would be relevant with respect to competency. As previously noted, *R.* 5:10–7(c) prohibits the use of these records "during the trial or hearing of any person, except as permitted by the rules of Court or the rules of evidence." The interests of justice, however, warrant use of the medical records under these circumstances and may well constitute relevant admissible evidence provided the appropriate foundations are laid. The issue must be determined by the trial court in its exercise of sound discretion based on the hearing record.

       In conclusion, we hold that the Prosecutor, having shown good cause, is entitled preliminarily to inspect and examine G. L.'s medical and psychiatric records in the custody of the Parole and Probation Departments and the State Home for Girls at Trenton. He may utilize the same in connection with a motion for a psychiatric examination of G. L., and permit his expert to examine the record and testify on the motion with respect to data contained therein. The county and assistant prosecutor and medical expert shall keep such information confidential. It may also be appropriate for the attorneys for G. L. and the defendant Bradshaw, and their respective experts, to inspect and examine these records, on a confidential basis, and perhaps produce affidavits and evidence on the motion. Any motion hearing or *voir dire* with respect to competency of a witness, *Evid. R.* 8, should be held *in camera*. Our decision preserves the "paternal attention that the juvenile court system contemplates," *McKeiver v. Pennsylvania,* 403 *U. S.* 528, 550, 91 *S. Ct.* 1976, 1989, 29 *L. Ed.* 2d 647, 664 (1971), while simultaneously recognizing that "[t]he basic purpose of a trial is the determination of truth," *Tehan v. Shott,* 382 *U. S.* 406, 416, 86 *S. Ct.* 459, 465, 15 *L. Ed.* 2d 453, 460, reh. den. 383

*U. S.* 931, 86 *S. Ct.* 925, 15 *L. Ed.* 2d 850 (1966); *cf. State v. Jamison,* 64 *N. J.* 363, 375-376 (1974).

The order is affirmed as modified.

*For affirmance as modified* — Chief Justice HUGHES, Justices MOUNTAIN, SULLIVAN, PASHMAN, CLIFFORD and SCHREIBER and Judge CONFORD—7.

*For reversal*—None.