250 N.J. Super. 103 (1991)
593 A.2d 393
STATE IN THE INTEREST OF L.P., A JUVENILE.
Superior Court of New Jersey, Chancery Division Middlesex County, Family Part.
Decided March 28, 1991.
*104 Alison Aaron, Assistant Middlesex County Prosecutor, for the State (Alan A. Rockoff, Middlesex County Prosecutor, Attorney).
Barry T. Albin, for L.P., (Wilentz, Goldman & Spitzer, Attorneys).
Steven D. Altman, for C.C., (Benedict, Altman & Swanson, Attorneys).
William Brigiani, for N.C., (Brigiani, Gelzer, Cohen & Schneider, Attorneys).
Michael A. Cohan, for B.H. (Cohan & Eckhaus, Attorneys).
James Fagen, for J.V.
Patricia L. Ratner, for New Jersey Education Association, (Wills, O'Neill & Mellk, Attorneys).
Bertram E. Busch, for Monroe Township Board of Education, (Busch and Busch, Attorneys).
*105 KUHLTHAU, J.S.C.
This matter involves the charges of aggravated sexual assault by five juveniles upon one female victim. The five cases are still in the pre-trial stages and one issue is whether statements regarding the events in question to school authorities before complaints were signed are "confidential" under state and federal statutes and if so whether an accused can gain access to any records of any statements in preparation of his defense.
Prior to trial, co-defendant, L.P., subpoenaed the high school principal, Charles Stein, and two guidance counselors, Castaldo and Longo, of the Monroe Township High School that the victim and all defendants attend. The subpoenas duces tecum sought, among other requests, any and all written statements or notes taken by these school employees from the alleged victim, T.M., defendant, L.P., or any other individuals interviewed as part of the school's investigation of the incident in question. Similar subpoenas were subsequently issued to a third guidance counselor Rockoff and school psychologist Licata, the latter having met with victim T.M.
Before complaints were filed on November 1, 1990, the events of October 16, 1990 were being discussed at school and the three guidance counselors interviewed several students concerning these events. Among those interviewed were the victim and five co-defendants. Guidance counselor Longo was present only for interviews involving the boys as they were also members of the school football team to which he is a coach. He made no notes. Guidance counselor Rockoff made no written notes during the course of the interviews that she sat in on. Accordingly, there were no notes from either of those people to be considered.
The guidance counselors were represented by counsel who appeared in order to present state or federal regulations which could either prevent any one of them from testifying, bar testimony as to certain matters, or bar the production of *106 subpoenaed materials. Counsel for the Monroe Township Board of Education, in protecting its interests and those of the principal, also appeared in order to be certain that the New Jersey Administrative Code, in particular N.J.A.C. 6:3-2.6(a)4 is followed with regard to any records which may be furnished by Monroe Township personnel. N.J.A.C. 6:3-2.6(a)4 concerns a three day notice requirement prior to the disclosure of any pupil records.
Defense counsel do not seek any of the pupil records of the juveniles. They seek records of any statements by way of admission or otherwise which may have been made to school counselors.
As a result of an in camera inspection of the notes of counselor Castaldo, this court finds her notes to have been information recorded solely as a memory aid for the counselor's behalf in order to recall specifics of the interviews. The notes are not pupil records but they are protected.
Title 6, Subchapter 6 of the New Jersey Administrative Code deals with substance abuse in schools, and guidance counselor Castaldo claims that her notes fall within its purview as she has interviewed the students in her role as a substance abuse counselor. The court finds that guidance counselor Castaldo had conducted the interviews in this capacity.
N.J.A.C. 6:29-6.3(b)(2) requires that district boards of education, "in adopting and implementing policies and procedures for the evaluation, intervention and referral to treatment of alcohol or other drug-affected pupils, provide for compliance with federal guidelines as to the confidentiality requirements established in Federal regulations found at 42 C.F.R. Part II." 42 C.F.R., Subsections 2.1(a) and 2.2(a), require that patient records shall be confidential and be disclosed only for the purposes and under the circumstances expressly authorized under the Federal Code. Sections 2.1(b)(2)(c) and 2.2(b)(2)(c) provide that whether or not there is patient consent, the contents of such record may be disclosed:

*107 (c) If authorized by an appropriate order of a court of competent jurisdiction granted after application showing "good cause" therefore. In assessing good cause the court shall weigh the public interest and the need for disclosure against the inquiry to the patient, to the physician-patient relationship, and to the treatment services ...
In making an application showing "good cause", defendant L.P. seeks to compel the production of the subpoenaed material pursuant to his constitutional, statutory and procedural rights to prepare a defense, to confront witnesses against him and to produce witnesses on his behalf. Defendant L.P. relies on U.S. Const. Amend. VI, Amend. XIV; Pennsylvania v. Ritchie, 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987); United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); Brady v. Marland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); N.J. Const. (1947), Art. 1, par. 10; Evid.R. 17, Comment 3: R. 3:13-3(a), (f).
The United States Constitution guarantees a criminal defendant a meaningful opportunity to present a complete defense. Pennsylvania v. Richie, 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40; United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Those interests promoted by confidentiality or evidentiary privileges must give way when such confidentiality conflicts with a defendant's constitutional right to obtain witnesses, information or evidence to prepare a defense of a criminal prosecution. In Re Myron Farber, 78 N.J. 259, 271-274, 394 A.2d 330 (1978), cert. den. sub. nom. New York Times Co. and Myron Farber v. New Jersey and Mario Jascalevich, 439 U.S. 997, 99 S.Ct. 598, 58 L.Ed.2d 670 (1978); State v. Roma, 140 N.J. Super. 582, 592-593, 357 A.2d 45 (Law Div. 1976).
In a case specifically dealing with the confidentiality of a juvenile's records, the New Jersey Supreme Court recognized "the Constitutional right of a defendant accused of a crime to confront the juvenile who is to testify against him with juvenile *108 records." State v. Allen, 70 N.J. 474, 483, 361 A.2d 5 (1976). Our Supreme Court, while acknowledging a policy of limiting the availability of certain juvenile records, stated that such records "should be available to third persons with a sufficient legitimate interest or whenever proper administration of justice so require[s]." Id. at 482-483, 361 A.2d 5.
The Allen court cites Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), in which the Supreme Court held that a defendant's Sixth Amendment right "to be confronted with the witnesses against him" superceded Alaska's policy to preserve the secrecy of a juvenile's testimony and disposition. See State v. Allen, 70 N.J. 474, 483, 361 A.2d 5 (1976). There the juvenile was a crucial prosecution witness and both his status (he was on probation) and prior testimony would have been relevant for the jury to consider in evaluating the juvenile's bias, prejudice, and credibility. Ibid. The court ruled in that case that:
The right of confrontation is paramount to the state's policy of protecting a juvenile offender. Whatever temporary embarrassment might result to [the juvenile] or his family by disclosure of his juvenile record ... is outweighed by petitioner's right to probe into the influence of possible bias in the testimony of a crucial identification witness. [415 U.S. at 319, 94 S.Ct. at 1112, 39 L.Ed.2d at 355 (1974)].
While Allen and Davis are authoritative in permitting the release of confidential documents, the New Jersey Superior Court in State v. Cusick, 219 N.J. Super. 452, 530 A.2d 806 (Div.App. 1987), upheld a lower court decision that a trial court's failure to grant defendant access to files on an 8-year-old sexual assault victim maintained by a state agency and child treatment center did not deny defendant his right to confront witnesses against him or to a fair trial. In Cusick, defendant contended that the failure to grant him access to the files on victim R.S. maintained by the Division of Youth and Family Services (DYFS) and the Arthur Brisbane Youth Treatment Center (Brisbane) denied him his federal and state constitutional rights to confront witnesses against him and to a fair trial. Id. at 455, 530 A.2d 806. A Deputy Attorney General representing *109 both DYFS and Brisbane explained that the subpoena could not be complied with because turning over the records which defendant sought was prohibited by state statutes requiring that DYFS and Brisbane records be kept confidential. Id. at 456, 530 A.2d 806. Following the trial judge's review of the records in chambers, the court held that "(1) disclosure of the records is not essential to the resolution of any issue before the court, nor was disclosure necessary for the conduct of the proceedings ..." Id. at 457, 530 A.2d 806.
The Superior Court was satisfied with the trial judge's determination that defendant's Sixth Amendment right to confront witnesses did not outweigh the need for confidentiality was amply supported by the record. Id. at 459, 530 A.2d 806.
The Cusick court cites to Commonwealth v. Ritchie, 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40, a case which addressed the issue whether a trial judge's refusal to order disclosure of a Child Welfare Service's (CWS) file on the victim pursuant to a statutory privilege of confidentiality, had infringed defendant's Sixth Amendment rights. State v. Cusick, 219 N.J. Super. 452, 462, 530 A.2d 806 (1987).
The Cusick court notes that "As in the case at bar, the primary reasons advanced by defense counsel in Ritchie to support his request for disclosure of the CWS file `was that there "could be defense witnesses disclosed by their records there. There could be matters there that would be favorable to the defendant."' [Commonwealth v. Ritchie, 509 Pa. 357,] 502 A.2d [148] at 159.... Unconvinced by these arguments, the trial court denied defendant access to the CWS records. However, the appellate court ruled that, under Matter of Pittsburg Action Against Rape, 494 Pa. 15, 428 A.2d 126 (1981) (PAAR), defendant was entitled to a limited examination of the records. In PAAR, the balance struck between the societal interest of promoting communication between rape victims and rape crisis counselors and that of arriving at the truth in criminal matters was that `upon defense request, a trial court *110 should authorize defense inspection of that portion of the crisis center's file which reflects verbatim statements of the complainant bearing on the facts of the alleged offense.'" Ibid. 219 N.J. Super. at 460, 530 A.2d 806.
The Appellate Court in Ritchie ruled to grant defendant therein a similar right of inspection and also adopted the in camera procedures and substantive limitations established in PAAR, to wit:
(1) only "notes that are verbatim accounts of the complainant's declarations and notes that the complainant has approved as accurately reflecting what she said" are to be inspected by defense counsel; (2) the trial court is to conduct an in camera inquiry to determine whether the matters contained in the rape crisis counselor's files are such verbatim only "statements"; (3) after the trial court identities the verbatim statements of the complainant, the defense counsel is to examine "these statements with an eye toward the utility or permissibility of their ultimate use at trial"; and (4) the defense counsel need not be given access to all statements in the file  rather, the court is to withhold from defense inspection "statements contained in a ... file [that] have no bearing whatsoever on the facts of the alleged offense and [that] relate instead only to ... counselling services...." [Ritchie, supra, 502 A.2d at 156 (quoting PAAR, supra, 428 A.2d at 132)]. [Ibid.]
In short, the Appellate Court held that the defendant could examine only those verbatim statements of the victim which the court, upon in camera inspection, deemed necessary to the defense. Ibid. Based upon Sixth Amendment considerations, the Pennsylvania Supreme Court concluded that the lower courts had erred in refusing defendant complete access to the CWS files. Id. at 461, 530 A.2d 806. The United States Supreme Court reversed the decision of the Pennsylvania Supreme Court. Pennsylvania v. Ritchie, 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987). Writing for the plurality of the Court, Justice Powell noted that "the ability to question adverse witnesses ... does not include the power to require the pretrial disclosure of any and all information that might be useful in contradicting unfavorable testimony." Id., 219 N.J. Super. at 462, 530 A.2d 806.
The Cusick court relies on Ritchie as confirmation of the propriety of the trial court's determination not to disclose the *111 DYFS and Brisbane files concerning R.S. Id. at 463, 530 A.2d 806. The Court concluded that the trial court "meticulously followed the procedures set forth in our statutes and properly refuse to permit defendant to inspect the files." Id. at 463, 530 A.2d 806.
This court, after reviewing all notes and memoranda prepared by the counselor and presented to the court in camera and having weighed the competing interests involved, finds that insufficient grounds exist to outweigh the statutory and judicial concern for the confidentiality of juvenile records. Based on this finding, defendant L.P.'s application for "good cause" under 42 C.F.R. 2.1 et seq. has not been met precluding authorization of an appropriate order of the court to disclose the notes of statements of those students interviewed by Monroe Township High School substance abuse counselor Castaldo except as noted below.
In accordance with the procedures established in PAAR and applied in Ritchie, this court conducted an in camera inspection to determine whether verbatim statements of the victim are necessary to the defense. This court finds that counselor Castalda's records reflect that a statement of the complainant bears on the facts of the alleged offense. T.M. "denied everything." This denial may or may not be valuable to the accused, but appears to be "Brady material."
There is another aspect to the notes of the counselor, the records of statements made by the accused juveniles. As to the availability of the juvenile's own statements, R. 3:13-3, as made applicable to juvenile delinquency actions in R. 5:1-1, governs discovery and inspection in criminal practice. Section (a) deals specifically with discovery by the defendant. Subsection (2) provides:
Upon written request by defendant, the prosecuting attorney shall permit defendant to inspect and copy or photograph any relevant records of statements or confessions, signed or unsigned, by the defendant or copies thereof, and a summary of any admissions or declarations against penal interest made by the defendant that are known to the prosecution but not recorded.
*112 Although the prosecutor in this case does not have possession of the statements, this court relies on the intent of R. 3:13-3(a)(2) in recognizing each accused juvenile's entitlement to disclosure of any records of statements that he has made in the past. As such, the court authorizes the release to each juvenile of copies of guidance counselor Castaldo's notes of the interview with him.
With regard to statements or notes taken by school psychologist Licata, counsel for the Board of Education, joined by the prosecution, argued that N.J.S.A. 45:14B-28 protects the confidentiality of communications between licensed, practicing psychologists and their patients, therefore, precluding disclosure of psychologist Licata'a notes of her meeting with victim T.M. The court is satisfied that Ms. Licata is a licensed practicing psychologist and communications with her and any notes fall within the privilege of N.J.S.A. 45:14B-28, which provides:
The confidential relations and communications between and among a licensed practicing psychologist and individuals, couples, families or groups in the course of the practice of psychology are placed on the same basis as those provided between attorney and client, and nothing in this act shall be construed to require any such privileged communications to be disclosed by any such person.
The court reviewed, in camera, the communications between psychologist Licata and victim, T.M. The notes contained no verbatim statements which would be subject to discovery. Any communications to psychologist Licata are privileged. This is a privilege belonging to the patient and any waiver of such need be made by the patient.
This opinion will have the force and effect of an order to be applied to the companion cases of the co-defendants who joined in this motion, FJ 9101951, FJ 9101952, FJ 9101953, FJ 9101954, FJ 9101955, FJ 9101956, FJ 9101957, FJ 9101958.
Copies of this opinion are filed in each of those cases.