ROSALIE L. GREGG, PROSECUTRIX-APPELLANT, v. JUVE-
NILE AND DOMESTIC RELATIONS COURT OF BERGEN
COUNTY, DEFENDANT-RESPONDENT.

Submitted February 16, 1945—Decided May 10, 1945.

For the appellant, *Thomas Brunetto.*

For the respondent, *Walter D. Van Riper,* Attorney-General
(*Eugene T. Urbaniak,* Deputy Attorney-General, of counsel).

The opinion of the court was delivered by

COLIE, J.   This is the appeal of Rosalie L. Gregg from a
judgment of the Supreme Court dismissing a writ of *cer-
tiorari* allowed to review the legality of an order of the Juve-
nile and Domestic Relations Court of Bergen County award-
ing the custody of Robert Kent Lascala, an infant, to the
New Jersey State Board of Children's Guardians.

The facts, as far as necessary to a decision, disclose that
appellant, who at that time was unmarried and whose name
was Rosalie Lascala, was committed to the New Jersey Refor-
matory for Women at Clinton, New Jersey, on March 1st,
1938, upon a charge of open lewdness.   Appellant was then
pregnant and on September 5th, 1938, gave birth to a son.

On November 25th, 1938, Miss Edna Mahan, superintendent of the Clinton Reformatory, filed a petition in the Bergen County Juvenile and Domestic Relations Court, praying that the child be committed to the care of the State Board of Children's Guardians. The petition recited that "it is not assumed that Rose [the present appellant] will be able to support this child, so for its own welfare, it is recommended that he be committed to the State Board of Children's Guardians. * * * there is no one financially able to provide for the care, maintenance and support of the within mentioned child, and that it will become a public charge and dependent on public society if some means is not provided for its support." Notice that a hearing on the petition would be held on December 15th, 1938, was served on Miss Mahan, but not upon the mother who was then an inmate of the reformatory. In addition the notice of hearing is conceded to have been sent to the State Board of Children's Guardians, the county adjuster, and the probation officer, both of Bergen County.

The record before us lacks the evidence that was introduced at the hearing which resulted in the order awarding custody to the State Board. The order recites that "the Court being satisfied that the best interests of Robert Kent Lascala required that (he) be placed under proper guardianship. It is ordered that (he) be committed to the care, custody and control of the New Jersey State Board of Children's Guardians * * * and * * * that the Board of Freeholders of the County of Bergen shall pay its proportionate expense for the care of Robert Kent Lascala * * * in accordance with Chapter 5 of Title 30 of the Revised Statutes, as amended."

In May, 1944, the appellant filed in the Juvenile and Domestic Relations Court a petition setting forth that she had not been served with notice or copy of the petition to transfer the custody of the infant to the State Board; that her mother, father and sister were able and capable of caring for the child if she could not do so and praying that the order of December 15th, 1938, be vacated. A rule to show cause was issued and served upon the State Board. On the return of the rule, the Juvenile and Domestic Relations Judge heard

testimony and after argument and the submission of briefs, denied the prayer of the petition to vacate the order of December 15th, 1938, and discharged the rule to show cause.

The question for decision is whether the Juvenile and Domestic Relations Court had jurisdiction to enter the order committing the infant to the care, custody and control of the State Board.

The Juvenile and Domestic Relations Court is a creature of the legislature and its power and jurisdiction are limited, and its orders to be effective must be in strict conformity with the statutes creating it. The relevant statutes are *R. S.* 30:5–19.

"Whenever (a) it appears that the parent or parents, guardian or person having the custody and control of any minor child is unable to support it, are dead, or cannot be found, and there is no person financially able and legally liable for the support of such child, or (b) whenever the court, wherein a complaint has been proffered as provided in chapter 6 of Title 9, Children—Juvenile and Domestic Relations Courts (Sec. 9:6–1 *et seq.*), shall determine that a child has been abandoned, by the parents, guardian, or person having the custody and control of any such child, or (c) whenever a conviction shall be had for abusing, neglecting or cruelly treating such child, or (d) whenever it appears that a child has been adjudged delinquent, a petition may be filed by any person, association or corporation having as one of its objects the prevention of cruelty to children, interested in such child, with the juvenile and domestic relations court of the county where the child has residence, setting forth the facts in the case."

And *R. S.* 30:5–21:

"The court shall cause a copy of such petition and notice of the time and place when the court will hear the same, to be served on or mailed to the state board of children's guardians, and the board of chosen freeholders of such county at least twenty days before such time, and to the parents, guardian or person having the custody or control of such child at the last known address of same at least ten days before such time."

It will be noted that section 21 of the statute last cited requires that a copy of the petition and notice of the time and place of hearing be served on or mailed to the Board of Chosen Freeholders. It is conceded that this was not done and the failure to do so may well be sufficient to render the subsequent proceedings void. However, we pass that point, preferring to rest our decision upon another and more substantial ground. The same section of the statute requires that a copy of the petition be served upon or mailed to "the parents, guardian or person having the custody or control of such child." It is stipulated that this requirement was not fulfilled with respect to the mother. The father's identity does not appear and there was no guardian. The respondent argues that service upon Miss Mahan, the superintendent of the reformatory, complies with the above requirement. Respondent's argument is based upon two statutes, *R. S.* 30:4–26.2 and *R. S.* 30:4–6, which respectively provide in part as follows:

30:4–26.2. "If any female committed to any of the institutions referred to in section 30:1–7 [and Clinton Reformatory is one such] of this title, at the time of such commitment, * * * is pregnant with child, which shall be born after such commitment, such child * * * may remain in such institution until it is two years of age and may then be removed therefrom. The name and history of such child shall be entered upon the records of the institution in the same manner as if the child had been committed or admitted to such institution as an inmate or patient."

30:4–6. "The chief executive officer of each * * * correctional institutional shall have the custody and control of every person indigent or otherwise admitted to his institution until properly discharged."

It is argued that the infant who was born while the mother was an inmate of the reformatory was in "custody and control" of Miss Mahan in her capacity of chief executive officer thereof. It will be noted that by *R. S.* 30:4–6 the chief executive officer shall have the custody and control of every person indigent or otherwise admitted to his institution, and the respondent argues that this infant by virtue of that part of

*R. S.* 30 :4-26.2 which we have set forth above was committed or admitted so as to constitute the chief executive officer thereof as the person having its custody and control. That particular statutory provision provided for the registering on the records of the institution of the birth of a child while the mother was an inmate. Its purpose seems to be to guard against the presence in state institutions of infants without any record as to the circumstances under which they came there and who they were. The very language of the statute negatives the contention of the respondent. It reads, "The name and history of such child shall be entered upon the records of the institution in the same manner as if the child had been committed or admitted to such institution as an inmate or patient." The use of the expression "as if the child had been committed or admitted" carries with it a clear intimation that it was within the mind of the legislature that the child was neither committed nor admitted. Had it been the intent to give the infant the same status as one committed or admitted, it would have been a simple matter to have used appropriate language to accomplish that end, but this the legislature did not do. We hold that under *R. S.* 30 :4-26.2 the child was not committed nor admitted to the institution and it follows by parity of reasoning that it therefore does not come within the language of *R. S.* 30 :4-6, giving the chief executive officer of the institution custody and control. We conclude, therefore, that the requirements of the statute have not been complied with in respect to service of a copy of the petition and notice of hearing and consequently that the Juvenile and Domestic Relations Court was without power to enter the order of December 15th, 1938.

We point out another respect in which the proceedings are defective. *R. S.* 30 :5-22 requires that before the return day on a petition such as that filed in this matter, the State Board of Children's Guardians shall make and file a report of its findings with the court and goes on to enumerate what that report shall contain, and *R. S.* 30 :5-24 provides that "Upon such report of findings being made and filed with the court as provided by section 30 :5-22 of this title, * * * the court shall examine * * * all parties in interest who

desire to be heard * * *." Compliance with this statutory provision is a condition precedent to jurisdiction by the court, and in the instant case there is no such report included in the return to the writ of *certiorari*. Appended to the respondent's brief and entitled "Appendix B" is a report made by an investigator of the State Board of Children's Guardians. The printing of this report as a part of respondent's brief is improper. If, upon being served with the state of case, the respondent had an objection thereto, there is a proper method for it to follow in order to amplify the return to the writ, but there is no authority for the practice here followed.

For the reasons stated above, the judgment of the Supreme Court dismissing the writ of *certiorari* is reversed.

*For affirmance*—THE CHIEF JUSTICE, PARKER, CASE, DONGES, DILL, JJ.   5.

*For reversal*—THE CHANCELLOR, HEHER, PERSKIE, COLIE, RAFFERTY, FREUND, JJ.   6.