**STATE OF NEW JERSEY, IN THE INTEREST OF D. B.,
A JUVENILE.**

Juvenile and Domestic Relations Court
Camden County

July 31, 1981.

*Joel B. Korin*, for juvenile D. B. (*Brown, Connery, Kulp, Wille, Purnell & Greene*, attorneys).

*N. Thomas Foster*, Assistant Prosecutor for the State (*John B. Mariano*, Camden County Prosecutor, attorney).

*Thomas H. Ward*, for Southern N. J. Newspapers, Inc., Publisher of the Courier Post.

*Katherine Hatton*, for Philadelphia Newspapers, Inc. (*Kohn, Savett, Marion & Graf*, P. C., attorneys).

PAGE, J. S. C. (temporarily assigned).

Attendance by the press at a juvenile delinquency dispositional hearing and publication of the details presented therein is sought in this matter. Petitioners *Philadelphia Inquirer, Philadelphia Daily News* and *Camden Courier Post* move to open the proceedings over the objection of the juvenile and his parents. The nature and extent of the confidentiality of a juvenile court dispositional proceeding is the issue presented.

On June 18, 1981 the juvenile, D. B., was adjudicated delinquent on his admission of risking widespread injury, in violation of *N.J.S.A.* 2C:17–2(c). The incident involved his placing a smoke bomb in a vacant locker in Cherry Hill East High School. Upon discovery the school officials evacuated the school and closed it for two days, canceling school activities.

The incident received widespread notoriety due to the mistaken information that the device was explosive and lethal. The local media published the name of the juvenile, which was verified by his father, the former executive editor of one of the newspapers.

At a probable cause hearing the press was admitted upon the express limitation that they not publish the names of other juveniles or high school students mentioned in the hearing. Cross-appeals were filed on behalf of the juvenile to close the hearing completely and on behalf of the newspapers to open it without limitation. Judge Bischoff of the Appellate Division briefly stayed that trial court's decision until his three-judge panel unanimously denied both requests for interlocutory appeal.

At the adjudicatory hearing the press was permitted with the consent of the juvenile and his parents. The juvenile then admitted that he had planted a homemade smoke bomb in a vacant locker as a prank at the end of the school year.

The device was examined by the State Police laboratory in Hammonton, N. J. and again by the U.S. Alcohol, Tobacco and Firearms Laboratory in Maryland. Both experts concluded that it was not a "bomb" as originally reported but rather a "high school prank," designed to produce smoke. Upon the evidence presented by the prosecutor and the admissions of the juvenile and counsel, this court adjudicated D. B. delinquent for the lesser of the two offenses charged, risking widespread injury, in violation of *N.J.S.A.* 2C:17–2(c). The court dismissed the charge of attempted arson at the request and upon the representation of the prosecutor that there was no evidence to support that

charge. A social investigation was ordered and the matter was listed for dispositional hearing.

Petitioners moved to open the dispositional proceedings to the press. The juvenile and his parents objected to this request and offered an affidavit stating family and psychological information will be presented at the dispositional hearing. They maintain that public disclosure of this information would have a detrimental effect on the juvenile. Counsel for the juvenile represented that he would present detailed information from a therapist as to the juvenile's problems and recommendations for a rehabilitative plan. Other than the newspaper articles, no other factual presentations were made by either side.

The case presents two separate issues. First, should this dispositional hearing be opened to the press? Second, can the court's disposition be disclosed?

## I. *Attendance At Juvenile Dispositional Hearings*

Attendance at juvenile court dispositional hearings is governed by *R.* 5:9–1(a). This provides:

> Confidentiality of Hearing. In the best interest of the juvenile, every hearing shall be conducted in private with only such persons in attendance as have a direct involvement in the proceeding, except as hereinafter provided. The judge, in his discretion, may also permit the attendance at any hearing of any person who has an interest in the work of the court, provided, however, that such person shall agree not to record, disclose or publish the names, photographs or other identifying data with respect to any of the participants in the hearing except as expressly authorized by the judge. Upon objection by the juvenile, his attorney or his parents, guardian or custodian, any person seeking permission to attend because of interest in the work of the court may be excluded from any hearing involving said juvenile. The judge may authorize or may himself disclose information in accordance with the appropriate provisions of the Juvenile and Domestic Relations Court Law (Title 2A, Chapter 4).

This court rule is the only authority for attendance at the normally confidential juvenile hearings. The statute involved, *N.J.S.A.* 2A:4–65(c), refers only to disclosure of information of "the identity of a juvenile . . . the offense, the adjudication and the disposition." The statute is silent on attendance at any hearings before this court.

The standing of the press to appear at a juvenile court hearing to cover one specific case is challenged by the juvenile and his parents. The court rule permits the attendance of "any person who has an interest in the work of the court." D. B. contends the interest of the press is only in this one specific case, rather than the general work of the court, and the rule does not permit their attendance. The issue is discussed in the Pressler comments to the rule:

Paragraph (a) of the 1974 rule was the same as its predecessor the requirement of confidentiality of hearing having been retained intact. This rule was again amended, effective September 8, 1975 to make clear that only persons having a direct involvement in the actual proceeding have a right to attend. Persons having a *general interest* in the court's work may be permitted to attend provided that the juvenile, his attorney or parents may object thereto. [Emphasis supplied].

Strict interpretation of this rule would seem to only permit students, others working in related fields or members of the press doing articles of general interest to attend. A broad interpretation of this rule would recognize that the press "has an interest in the work of the court" when they seek to observe its handling of a particular case. This would include the public's right to know exactly what happened in a specific instance of widespread notoriety. The broad approach is preferable. Public interest in the work of the juvenile court should be encouraged regardless of whether the interest is aroused by reason of the specific incident or the general work of the juvenile justice system.

This court must balance the interest of the press and the public versus the interest of the juvenile and his family in making this decision.

In *State in the Interest of B.C.L.*, 82 *N.J.* 362 (1980), the court set out the balancing test to be applied by trial courts in interpreting the statute(*N.J.S.A.* 2A:4–65(c)) permitting disclosure. While that case involved the statute rather than the court rule (*R.* 5:9–1), the principles set out are applicable in either instance. Justice Pashman noted:

> Thus the determination by the juvenile judge regarding disclosure should involve a weighing of the public's right to know and the deterrent effect of disclosure against the particular juvenile's prospects for rehabilitation. This balancing should also take account of the specific circumstances of the juvenile's offense. [at 375]

It is urged that the public's right to know in this case results from the considerable notoriety given to this matter by the closing of the school in response to the early erroneous reports that the bomb could have done considerable damage. It must be noted that the correct facts that the device was not explosive were made available to the press and public at the adjudicatory hearing.

The deterrent effect of publication of the juvenile's name has already been accomplished in this case. The name was obtained from "other sources" and verified by his father. The details of the school's closing and the court hearings to date have been published throughout the area. The substantial school reaction to pranks of this type should be well known to mischievous students. The further exposure of family details would seem unrelated to the deterrent theory.

Petitioners urge that since D. B.'s name has already received widespread publication there is no further need for confidentiality. The extension of this argument would provide that once the name is obtained from "other sources" by one paper the media can proceed to divulge details of his family life and the consultants reports without restraint. This would in effect leave control of the confidentiality of the juvenile court solely in the hands of a newspaper. Public curiosity or the newsworthiness of events can never be a justification for unrestrained release of information. The notoriety of the delinquent acts must not be considered as a reason for juvenile courts to abandon their rehabilitative purpose. The repeated emphasis upon D. B.'s misdeed, including not only his name but adding additional details on his family, friends and school relationships, will compound the effects of exposure on any rehabilitative plan.

D. B.'s offense, were he an adult, would be a crime of the fourth degree. This is much less severe than the criminal offenses involved in *State in the Interest of B. C. L.*, *supra* (arson, extortion, conspiracy), or any of the other cases cited by petitioners; *Richmond Newspapers, Inc. v. Virginia*, 448 *U.S.* 555, 100 *S.Ct.* 2814, 65 *L.Ed.2d* 973 (1980) (murder); *Gannett Co. Inc. v. DePasquale*, 443 *U.S.* 368, 99 *S.Ct.* 2898, 61 *L.Ed.2d* 608 (1980) (murder); *Sheppard v. Maxwell*, 384 *U.S.* 333, 86 *S.Ct.* 1507, 16 *L.Ed.2d* 600 (1966) (murder); *U.S. v. Cianfrani*, 573 *F.2d* 835 (3 Cir., 1978) (mail fraud, racketeering, income tax evasion, obstruction of justice); *Landmark Communications v. Virginia*, 435 *U.S.* 829, 98 *S.Ct.* 1535, 56 *L.Ed.2d* 1 (1978) (judicial misconduct); *Nebraska Press Ass'n v. Stuart*, 427 *U.S.* 539, 96 *S.Ct.* 2791, 49 *L.Ed.2d* 683 (1976) (murder); *Oklahoma Publishing Co. v. District Court*, 430 *U.S.* 308, 97 *S.Ct.* 1045, 51 *L.Ed.2d* 355 (1977) (murder); *Smith v. Daily Mail Publishing Co.*, 443 *U.S.* 97, 99 *S.Ct.* 2667, 61 *L.Ed.2d* 399 (1979) (murder); *Cox Broadcasting Co. v. Cohn*, 420 *U.S.* 469, 95 *S.Ct.* 1029, 43 *L.Ed.2d* 328 (1975) (rape and murder); *Davis v. Alaska*, 415 *U.S.* 308, 94 *S.Ct.* 1105, 39 *L.Ed.2d* 347 (1974) (burglary); *State v. Hannah*, 171 *N.J.Super.* 325 (App.Div., 1979) (murder); *State in the Interest of D. H.*, 153 *N.J.Super.* 490 (App.Div., 1977) (arson); *In re Gjevre*, 5 *Media L. Reptr.* 2328 (Cal.Super.Ct. City, 1980) (murder).

In *State v. Allen*, 70 *N.J.* 474 (1976), the Supreme Court permitted the prosecutor to examine certain medical records of an adjudicated juvenile who had been listed as a witness for an adult criminal defendant. The scope of the intrusion was subsequently limited to that which was absolutely necessary. Justice Schreiber, speaking for a unanimous court, said: "The extent to which disclosure should be made when balanced against the interest of confidentiality of the juvenile's records is not readily answerable. It is this delicate task to which the courts must address themselves." *Id.* at 484.

A similar result was reached in *State v. Brown*, 132 *N.J.Super.* 584 (Law Div. 1975). That court noted (at 588) "any disclosure of juvenile records should be strictly circumscribed so that only

information required by the particular circumstances is revealed."

The same balancing test was applied to permit limited publication of names and addresses of juveniles for use in a civil proceeding in *State in the Interest of D. H.*, 153 *N.J.Super.* 490 (App.Div.1977). Judge Pressler there stated:

> The Supreme Court in *State v. Allen* has made clear that both the statutory authorization of *N.J.S.A.* 2A:4–65 and the rule authorization of *R.* 5:10–7(c), permitting the court to order specified disclosure of juvenile records, contemplate the court's obligation to weigh the nature of the legitimate interest of the person seeking disclosure and the extent of his need for disclosure in order to protect his own rights against the interest of the juvenile in confidentiality and the public policy upon which confidentiality is based. . . .
>
> The extent of the permitted intrusion must be no *greater*, however, than that which is actually required by the third person to meet his legitimate needs. [at 495–496]

The limited record before the court on this motion includes the adjudicatory hearing, newspaper articles, an affidavit by the juvenile's counsel and his oral representations as to the information he will present at the dispositional hearing. From this record certain determinations can be made.

Public interest in this case is substantial. Full information as to details of the offense and identity of the perpetrator has been provided. There is no demonstrated public need or right to know the private details of his family relationship nor other personal information to be presented by counsel for D. B. Fear of publication of intimate details of their lives would inhibit the family's open discussion of their situation. Release of this information would be seriously detrimental to the juvenile and would hamper development and execution of a rehabilitative plan.

Good cause has been shown that the juvenile's interest in a closed, confidential hearing greatly outweighs any interest of the public in the details of his family life. The best interest of the juvenile would not be served by permitting the press to attend his dispositional hearing. This court will conduct a closed dispositional hearing.

## II. *Disclosure Of The Court's Disposition*

Disclosure of the court's disposition is governed by statute, *N.J.S.A.* 2A:4–65(c) which provides:

c. Information as to the identity of a juvenile 14 years of age or older adjudicated delinquent, the offense, the adjudication and the disposition may be disclosed to the public where the offense for which the juvenile has been adjudicated delinquent, if committed by an adult, would constitute a crime of the first, second or third degree, or aggravated assault, destruction or damage to property to an extent of more than $500.00 or the manufacture or distribution of a narcotic drug, unless upon application at the time of disposition and for good cause shown, or upon its own motion, the court orders the withholding from public dissemination of all or a portion of such information on the grounds that public disclosure would not serve the best interests of the juvenile and the public.

The statute has been interpreted extensively in *State in the Interest of B.C.L., supra.* That court set down certain guidelines to be followed and noted:

... By enacting a limited disclosure statute, the Legislature has determined that in many cases, the assistance which absolute secrecy might provide to rehabilitation may not be secured at the expense of the public's right to know. This is neither a total repudiation nor a complete subordination of the goal of rehabilitation. *Cf. post* [82 *N.J.*] at 384, 385. It is, however, a substantial change in public policy. To assail that policy would be "to skirt the legislative domain and to deal with issues most properly the concern of the Legislature." *New Jersey State Chamber of Commerce v. New Jersey Election Law Enforcement Commission*, 82 *N.J.* 57, 81 (1980). We decline in this matter to question the judgment of the Legislature, much less critcize it.

*In State in the Interest of M. L.*, 64 *N.J.* 438 (1974), our highest court stated:

... The juvenile and domestic relations court is a creature of statute and has only the powers and jurisdiction conferred on it by the Legislature. *Gregg v. Juvenile and Domestic Relations Court*, 133 *N.J.L.* 89 (E. & A.1945). It has no inherent power or authority. [at 440].

■ D. B. was adjudicated delinquent for a crime of the fourth degree. There was no evidence to indicate "destruction or damage to property to an extent of more than $500." Thus, under *N.J.S.A.* 2A:4–65(c) there appears to be no statutory authority for release of this disposition.

■ Petitioners urge in the alternative, that if *N.J.S.A.* 2A:4–65(c) does not provide the authority, then subsection (b) would

provide the necessary authorization. Subsection (b) permits the disposition to "be disclosed to the victim." It is contended that the public is the real victim in this case where the device was planted in a public high school and there are no identifiable victims.

There is not merit to this contention, for subsection (c) does specifically provide for release of such information "to the public." The legislative designation of the public in that subsection excludes the public from subsection (b). *Expressio unius est exclusio alterius.*

In absence of specific statutory authority the court would appear powerless to permit the disclosure of the disposition. However, even a court created by statutory authority may not unnecessarily infringe upon the freedom of the press as guaranteed in the First and Fourteenth Amendments of the U.S. Constitution. While not absolute, the freedom of the press must never be denied without justification. This justification must be found in each and every case by again balancing the interests.

Most recently the U.S. Supreme Court in *Richmond Newspapers, Inc. v. Virginia supra,* declared an unconstitutional infringement on the freedom of the press occurs whenever they are barred absolutely, without an "over-riding interest" being shown. This principle was previously held applicable to juvenile proceedings as well in *Oklahoma Publishing Co. v. District Court, supra.* In that case the court allowed publication of a juvenile's name and photograph in direct contradiction of the state statute.

The balancing of the interests as to this limited disclosure has a much different result from that previously determined in the question of access to the dispositional hearing. On the one side the public's right to know the final disposition is important. The final decision is awaited by those who have followed the published reports of the case to date. The public may judge for itself the fairness of the court in considering its interests as well

as the juvenile's and his parents'. Greater deterrence can also be achieved by permitting publication.

On the other side, there is no showing either that nondisclosure of the disposition will serve his best interests or have any detrimental effect upon him. On the contrary, it would appear helpful to D. B. to have the public know that he has finally paid his debt to society for his errant deed. In any event, disclosure will permit the juvenile to put this incident behind him.

The balancing of constitutional rights under these specific facts weighs heavily in favor of disclosure of the disposition. The statute cannot be constitutionally applied in this case to prohibit that disclosure. The constitutional rights of the free press will be enforced to this limited extent.

The dispositional hearing will be closed to the press and public. At the conclusion of the hearing the decision of the court will be released.